UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
EXTENET SYSTEMS, INC.,

                            Plaintiff,

  -against-

VILLAGE OF FLOWER HILL and FLOWER HILL
VILLAGE BOARD OF TRUSTEES,

                         Defendants.

-----------------------------------------------------------------X

**NOTICE OF APPEAL**

DOCKET NO.: 2:19-cv-05588-FB-VMS

Hon. Frederic Block

      Notice is hereby given that EXTENET SYSTEMS, INC., Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit from the Memorandum and Order of the Hon. Frederic Block, U.S.D.J., entered in this action on the 1st day of August, 2022 (EDNY Docket No. 39). This appeal is taken from each and every part of said Memorandum and Order including the denial of Plaintiff's Motion for Summary Judgment and granting of Defendants' Motion for Summary Judgment. A copy of the Memorandum and Order being appealed from is annexed hereto.

Dated:   White Plains, New York
           August 11, 2022

                                                   **CUDDY & FEDER LLP**
                                                   *Attorneys for Plaintiff*
                                                   445 Hamilton Avenue, 14th Floor
                                                   White Plains, New York 10601
                                                   (914) 761-1300

                                                By: S:/*Brendan Goodhouse*
                                                      Brendan Goodhouse

To:    (*Via ECF*)
        Edward M. Ross, Esq.
        Judah Serfaty, Esq.
        Rosenberg Calica & Birney LLP
        100 Garden City Plaza, Suite 408
        Garden City, New York 11530

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
EXTENET SYSTEMS, INC.,

              Plaintiff,  **MEMORANDUM AND ORDER**
  Case No. 19-CV-5588-FB-VMS

   -against-

VILLAGE OF FLOWER HILL and
FLOWER HILL VILLAGE BOARD OF
TRUSTEES,

             Defendants.
--------------------------------------------------x

*Appearances:*
*For the Plaintiff:*  *For the Defendants:*
CHRISTOPHER B. FISHER  EDWARD M. ROSS
BRENDAN GOODHOUSE  JUDAH SERFATY
Cuddy & Feder LLP  Rosenberg Calica & Birney LLP
445 Hamilton Avenue, 14th Floor  100 Garden City Plaza, Suite 408
White Plains, New York 10601  Garden City, New York 11530

**BLOCK, Senior District Judge:**

In this action under the Telecommunications Act of 1996 ("the Act"), 47 U.S.C. §§ 251-61, 332(c)(7), ExteNet Systems, Inc. ("ExteNet"), seeks judicial review of a decision of the Flower Hill Village Board of Trustees ("the Village" or "the Board") denying ExteNet's application for a permit to install wireless infrastructure on public rights-of-way in the village. Both parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following, reasons the Village's motion is granted and ExteNet's is denied.

1

# I

The following facts are taken from the pleadings and the parties' Rule 56.1 statements. Except where noted, they are undisputed.

ExteNet builds and operates telecommunications infrastructure, including "small wireless facilities" that house low-power antennas to improve network connectivity. It operates under a Certificate of Public Convenience and Necessity ("CPCN") from the New York State Public Service Commission.

As their name suggests, small wireless facilities are substantially smaller than the large, freestanding cellular towers traditionally used by providers. They are about the size of a backpack and, under regulations promulgated by the Federal Communications Commission ("FCC"), are mounted on structures (such as utility poles or buildings) no more than 50 feet high or 10% taller than adjacent structures, whichever is greater. *See* 47 C.F.R. § 1.6002(*l*)(1).

For approximately seven years, ExteNet has been under contract with Verizon Wireless, a major wireless provider, to build and operate small wireless facilities throughout Long Island. The stated goal of the contract is to improve coverage of Verizon's 4G LTE network.[1] In broad terms, Verizon identifies a deficiency in its network and asks ExteNet to design a solution that will provide a specified signal

---

[1] 4G LTE stands for "fourth-generation long-term evolution," a wireless standard that improves the capacity and speed of a carrier's network.

strength over a specified area. Pursuant to its CPCN, ExteNet must secure permission from the local authorities before beginning installation.

In 2016, Verizon identified the area around the Village of Flower Hill as having insufficient 4G LTE service and asked ExteNet to design and install a network of 66 small wireless facilities, eighteen of which would be located within the Village. Verizon estimated that the network would provide a signal strength of -85 decibel-milliwatts (dBm) to 90% of the area under consideration.

ExteNet first filed a permit application for one small wireless facility in May 2017. Shortly thereafter, the Village imposed a moratorium on such applications while it considered an ordinance governing them. In March 2019 the Board adopted Article VIII to Chapter 209 of the Village Code ("Article VIII"), which now regulates the approval process for small wireless facilities.

In the meantime, ExteNet had filed permit applications for the eighteen small wireless facilities to be located within the Village in late 2018 and early 2019. ExteNet proposed mounting the facilities on ten new utility poles, two existing poles and six replacement poles. At a meeting with ExteNet in April 2019, Village officials expressed a preference for more "decorative" poles disguised as streetlights and fewer utility poles. In response, ExteNet submitted a revised proposal for eleven streetlights, two existing poles and five replacement poles.

The Board held public hearings on ExteNet's application on May 6 and June

3, 2019. Opposition to the proposal, which came from both members of the Board and residents, focused on the lack of need for improved 4G LTE coverage, adverse affects on Village's aesthetic and concerns about exposure to radio waves. In response, ExteNet offered to reduce the height of the mounting structures from 30 to 20 feet and to work with a consultant on an aesthetically acceptable streetlight design. Nevertheless, a third public meeting on July 1, 2019, revealed continued opposition.

Later in July, ExteNet hosted a public forum to discuss and identify designs for the decorative streetlights. No consensus emerged, with several participants rejecting the possibility of any acceptable design and others expressing a preference for existing utility poles. ExteNet then submitted yet another alternative using one or two streetlights, one flagpole, three existing poles, six or seven new poles and six replacement poles. At a fourth public meeting on August 5, 2019, ExteNet described the first proposal as focusing on utility poles, the second on decorative poles, and the third as a hybrid of the two.

At a public meeting held on September 3, 2019, the Board voted on ExteNet's application and unanimously denied it. It then approved a written statement of findings prepared by the Village Attorney and entered them into the record. As grounds for the denial, the statement of findings cited: "(1) the significant adverse aesthetic and property values impacts of the 18 nodes permeating the tiny Village;

(2) there is no gap in wireless coverage for Verizon and no need to justify the significant adverse impacts; and (3) ExteNet's abject refusal to submit for consideration an actual fixed plan for each of the 18 wireless nodes and poles, instead offering multiple different plans, with different pole/node locations and configurations, abject refusal and failure to provide onsite photo simulations for each of its proposed nodes, and refusal to comply with the public notice provisions of the Village Code which further required denial of the application." Defs. 56.1 Stmt. ¶ 13.

    This action followed.

## II

**A.**    **The Act's Preemptive Effect**

    The Act declares that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). It then provides, however, that "[n]othing in this section affects the authority of a State or local government to manage the public rights-of-way . . . , on a competitively neutral and nondiscriminatory basis[.]" *Id.* § 253(c). These declarations are repeated —perhaps unnecessarily— later in the Act:

    (A)    General authority

    Except as provided in this paragraph, nothing in this chapter shall limit

5

or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B)   Limitations

(i)   The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

(I)   shall not unreasonably discriminate among providers of functionally equivalent services; and

(II)   shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

*Id.* § 332(c)(7).

## B.   Substantial Evidence

In addition to banning prohibitions (or effective prohibitions) and discrimination, the Act requires that any denial of an application "to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Substantial-evidence review is a "deferential standard, and courts may neither engage in their own fact-finding nor supplant the Board's reasonable determinations." *Omnipoint Comm'ns, Inc. v. City of White Plains*, 430 F.3d 529, 533 (2d Cir. 2005) (internal quotation marks and alterations omitted). "Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence." *Id.* (internal quotation marks omitted).

6

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "If the Court finds that even one reason given for the denial is supported by substantial evidence, the decision of the local zoning body cannot be disturbed." *T-Mobile Ne. LLC v. Town of Islip*, 893 F. Supp. 2d 338, 355 (E.D.N.Y. 2012) (internal quotation marks and alteration omitted).

### C.     Summary

To summarize, the Act "is in many important respects a model of ambiguity or indeed even self-contradiction." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 397 (1999). But at least three clear principles emerge from the statutory language and cases construing it.

First, the Act forbids a municipality from prohibiting or effectively prohibiting the provision of personal wireless services. Any local permitting requirement that does so is preempted.

Second, the Act requires a municipality to support its decision with substantial evidence.

Third, the Act requires a municipality to make its permitting decisions in a nondiscriminatory manner. A coverage gap has no apparent bearing on discrimination; rather, the statutory standard is whether the favored and disfavored applicants offer "functionally equivalent services," 47 U.S.C. § 332(c)(7)(B)(i)(I).

7

With these principles in mind, the Court turns to ExteNet's claims in this case.

### III

ExteNet's complaint includes four claims. First, it alleges that Article VIII is preempted because it facially constitutes an effective prohibition on personal wireless services in violation of 47 U.S.C. § 253(a). Second, it alleges that Article VIII, as it was applied to its permit application, is preempted for the same reason. Third, it alleges that the denial of its application violated § 332(c)(7) because it was an effective prohibition, discriminatory, and not supported by substantial evidence. Fourth, it claims that the denial violated § 27 of New York's Transportation Corporations Law.

The parties' motions for summary judgment reframe the issues in a more sensible way. The balance of this memorandum and order addresses those issues.

**A.     Did the Board's denial effectively prohibit personal wireless services?**

As noted, the Act is not a model of clarity. In part, this is because it "strikes a balance between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Omnipoint*, 430 F.3d at 531 (internal quotation marks omitted).

The Second Circuit addressed where the balance lay in *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630 (2d Cir. 1999). After "a detailed parsing of the statutory language, including layers of highly technical definitions," the circuit court held that

8

the proper balance could be found by deciding "what Congress meant by 'personal wireless services.'" *Id.* at 641. It then concluded that "local governments may not regulate personal wireless service facilities in such a way as to prohibit remote users from reaching such facilities." *Id.* at 643. "In other words, local governments must allow service providers to fill gaps in the ability of wireless telephones to have access to land-lines." *Id.*

By contrast, the stated intent of Verizon's contract with ExteNet was to improve Verizon's 4G LTE service. Indeed, it is undisputed that a signal strength far less than Verizon's desired -85 dBm would still be sufficient to make a phone call. *See* Defs. Counter 56.1 Stmt. ¶ 151 ("At the level of signal strength is typically when the mobile user would experience their device 'downshift' into 3G or even 1X service which only supports voice." (quoting ExteNet's engineering expert)).

ExteNet objects that a 2018 ruling by the FCC expands the scope of the Act to include services beyond access to a telephone network. In that ruling, the FCC "clarif[ied] that an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service. This test is met not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." *In re Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.*, 33 F.C.C.R.

9

9088, 9104-05 (2018) (footnotes omitted).

ExteNet argues that the FCC's ruling is entitled to deference under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). However, *Chevron* deference applies only when the statute in question is silent or ambiguous. *See id.* at 842-43. Although the Second Circuit found the phrase "personal wireless services" "opaque," it ultimately relied on "[t]he plain statutory language" to define it. Therefore, the phrase was not ambiguous.

Improved capacity and speed are desirable (and, no doubt, profitable) goals in the age of smartphones, but they are not protected by the Act. *See Willoth*, 176 F.3d at 643 ("We hold only that the Act's ban on prohibiting personal wireless services precludes denying an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines."). The circuit court may wish to reconsider its definition in light of new technology, but the Court is not in a position to ignore its binding pronouncement. *Accord Crown Castle NG East LLC v. Town of Hempstead*, 2018 WL 6605857, at *9 (E.D.N.Y. Dec. 17, 2018) ("A gap in 4G coverage does not establish that the target area is underserved by voice cellular telephone service."); *Clear Wireless LLC v. Bldg. Dep't of Vill. of Lynbrook*, 2012 WL 826749, at *9 (E.D.N.Y. Mar. 8, 2012) ("[I]t is not up to the FCC to construe the [Act] to say something it does not say, nor up to the Court to find broadband communication

encompassed by the law." (internal quotation marks omitted)).

**B.     Was the Board's denial supported by substantial evidence?**

Although the Act requires that the denial of an application to install wireless facilities be supported by substantial evidence, *see* 47 U.S.C. § 332(c)(7)(B)(iii), it does not set any substantive standards for evaluating the application; "[t]hat authority must be found in state or local law."  *Willoth*, 176 F.3d at 644.  Under New York law, lack of "public necessary" can justify a denial.  *See Omnipoint*, 430 F.3d at 535 (citing *Consol. Edison Co. v. Hoffman*, 43 N.Y.2d 598, 611 (1978)).  In the context of wireless facilities, public necessary requires the provider "to demonstrate that there was a gap in cell service, and that building the proposed [facility] was more feasible than other options."  *Id.*

Thus, as with the effective prohibition issue, the lack of a gap in coverage is relevant here and can constitute substantial evidence justifying denial of a permit. For the reasons stated in the previous section, there was substantial evidence justifying the Board's conclusion that there was no gap in coverage justifying ExteNet's application.  And, since one reason given by the Board for its decision was supported by substantial evidence, the Court need not evaluate its other reasons. *See Town of Islip*, 893 F. Supp. 2d at 355.

**C.     Was the Board's denial discriminatory?**

Unlike the prior two issues, there is little caselaw as to what constitutes a

11

discriminatory denial. Fortunately, the statutory standard is clear. As noted, the comparison must be between "providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I).

ExteNet principally argues that the Village's permitting process singles out small wireless facilities and impose requirements "above and beyond those applied to any other telecommunication structure." Pl's. Mem. of Law in Supp. of its Mot. for Summ. J. at 24. But it fails to identify any such structure that offers functionally equivalent services. The only other candidate in the record is a large cell tower, which, by ExteNet's own admission, does not offer the same functionality as its small wireless facilities.

ExteNet briefly argues that the Village allowed Altice USA to install small wireless facilities without prior permission, but the comparison is still not apt. Altice One is a cable provider to whom the Village was legally required to offer access to its rights-of-way. In addition, Altice USA offers cable and WiFi access; by ExteNet's own admission, these are not equivalent to the cell service provided by its small wireless facilities.

**D.   Did the Board's denial violate New York law?**

Finally, ExteNet argues that the Board's denial violates § 27 of New York's Transportation Corporations Law. That statute—somewhat confusingly—governs telephone and telegraph corporations, and provides that "any such corporation may

12

erect, construction and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets, and highways." *Id.*

Given its focus on "lines," it is far from clear that the statute applies to providers of wireless services. In any event, the statute requires that the corporation must "first obtain from . . . the trustees of villages . . . permission to use the streets within such . . . village . . . for the purposes herein set forth." *Id.* It is undisputed that ExteNet did not receive such permission.

## IV

For the foregoing reasons, the Village's motion for summary judgment is granted and ExteNet's motion is denied. The Clerk shall enter a judgment dismissing the case.

**SO ORDERED.**

                                                                    /S/ Frederic Block
                                                                    FREDERIC BLOCK
                                                                    Senior United States District Judge

Brooklyn, New York
July 29, 2022